## Richmond

NORFOLK SOUTHERN RAILWAY COMPANY v. WILLIAM D. RAYBURN.

April 23, 1973.

Record No. 8101.

Present, All the Justices.

*William T. Prince (Gerard P. Rowe; Williams, Worrell, Kelly & Worthington,* on brief), for plaintiff in error.

*Raymond H. Strople (Dennis F. McMurran; Bernard Miller; Moody, McMurran & Miller,* on brief), for defendant in error.

HARMAN, J., delivered the opinion of the court.

William D. Rayburn (Rayburn or plaintiff) brought this action under the Federal Employers' Liability Act (the Act), 45 U.S.C.A. § 51 *et seq.,* against his employer, Norfolk Southern Railway Company (Norfolk Southern or defendant), alleging that he was injured in the course of his employment as a result of defendant's negligence. The jury found for Rayburn and awarded him $125,000 in damages. We granted a writ of error to Norfolk Southern from the judgment order entered by the trial court on this verdict.

The defendant, in its twenty-five assignments of error, alleges that the verdict was excessive, that the trial court erred in admitting certain evidence and that the court erred in granting some instructions and refusing other instructions.

Since the plaintiff received a jury verdict in his favor which has the approval of the trial court, we must, under well established principles, view the evidence in the light most favorable to him. *Riley* v. *Harris,* 211 Va. 359, 177 S.E.2d 630 (1970).

Plaintiff, who was employed as a machinist at the defendant's shops in Chesapeake, was injured on July 2, 1970, while he was engaged in working on the diesel engine of one of defendant's locomotives. Plaintiff and his fellow workmen were dismantling the "complete entire engine down to the bare crankshaft for a complete overhaul."

Prior to the time he began working on the engine on July 1, plaintiff had visually inspected the locomotive on two occasions while it was standing on a storage track outside the shop. His inspections disclosed that the engine and running boards, which are metal walkways located on either side of the engine, were "drenched" with oil. He reported this condition to two of his superiors and suggested that the oil should be cleaned from the locomotive before it was brought into the shop. Each of them told him "they neither had the time or money to clean the engine."

Plaintiff's testimony revealed that the running boards had not been cleaned when work was commenced to dismantle the engine on July 1.

On July 2, as plaintiff was attempting to loosen a "rod bolt" on the engine, his feet which were "on this oil went out from under (him) and (he) fell backwards" and sustained the injury to his back.

Plaintiff was treated at the emergency room at Norfolk General Hospital shortly after his injury by Dr. W. C. Pole who diagnosed his injury as a bruise or sprain of the low back. When his complaints did not subside he was admitted to the hospital on July 8 and remained there until July 24. He was subsequently readmitted to Norfolk General Hospital on August 5 and was discharged on August 22.

In February, 1971, seven months after he was injured, plaintiff consulted Dr. Hyman Stromberg, a neurological surgeon, who subsequently performed a hemalaminectomy to remove parts of the discs at the third, fourth and fifth levels on the left side of plaintiff's spine. Plaintiff was hospitalized for 18 days in connection with this operation.

Plaintiff testified he was still unable to work when his case came to trial in March, 1972. He complained of pain and stiffness in his back and numbness, pain and a twitching in his left leg. He further testified that the toes on his left foot were so sensitive "I can hardly stand for my wife to put my sock on." When asked to describe his condition at the time of trial, plaintiff answered:

"I have pain all the time in my lower back, and especially in my left leg. My back is not as bad as my leg. My leg and foot, especially the foot, bothers me very badly. I'm not able to sleep well at night. I am up at least three times a night. I can't walk for any distance. I can't sit for any length of time. I am hurting now terribly because I have to sit too long today in a hard chair. And I just am in misery all the time, twenty-four hours a day. I don't rest well even when I'm asleep. It is just not a restful sleep."

Since the accident Rayburn had been unable to perform the maintenance work on his home and car as he did prior to his injury nor was he able to engage in many activities in which he engaged before his injury.

Rayburn's loss of wages between July 2, 1970, and the time of trial amounted to approximately $14,000.

Dr. Stromberg, who performed surgery on the plaintiff, described the operation and plaintiff's subsequent treatment in the hospital. Dr. Stromberg also saw Rayburn as an outpatient after his discharge from

the hospital. Rayburn was last seen by Dr. Stromberg in October, 1971, approximately six months after the operation. At the time Dr. Stromberg's prognosis, as shown by his records, was: "After today's examination I do not feel that Mr. Rayburn will ever return to work. How much of his problem is physical and how much is emotional is again difficult to say. I think that the best thing that can happen to him is a rapid settlement of his present litigation." When last seen by Dr. Stromberg, in addition to the scar on his back, Rayburn was suffering from a "foot drop," a loss of dorsiflexion of the foot, which affected his gait when walking and the normal "ankle jerk" was absent in his left foot. Dr. Stromberg, in his testimony, indicated that this foot drop had become more pronounced between his last examination of Rayburn and the date of his testimony approximately five months later. When asked whether Rayburn's injuries were of a permanent nature, Dr. Stromberg stated: "A sufficient length of time has elapsed for him to have a return of function if he [is] going to regain it."

In its brief and at oral argument defendant claims that the trial court erred in instructing the jury. Defendant places particular emphasis on Instruction 4 granted by the court which reads as follows:

"The court instructs the jury that if you believe from the evidence that the defendant violated one of its own safety rules, then it was guilty of negligence."

The plaintiff had introduced defendant's safety rule 23 (B) which provided:

"When it is necessary to make repairs to engines, boilers, tanks, and tank cars, such parts shall be cleaned before mechanics are required to work on same. This will also apply to cars undergoing general repairs."

The printed rules were prefaced by a "General Notice" which required all employees to "obey the rules" and all supervisors to "insist upon obedience" to the rules. All employees were required to "correct, when practicable, or report to their immediate supervisor for correction, any unsafe conditions or practices observed during the performances of their work."

Defendant argues here that evidence of the violation of a safety rule is not negligence per se but is only evidence of negligence which

may be considered, along with the other evidence, by the jury in determining whether defendant was negligent. We agree with this contention. *Thomas v. Conemaugh B. L. R. R.*, 133 F. Supp. 533, 540-41 (W.D.Pa., 1955); *Healy v. Pennsylvania R. R. Co.*, 184 F.2d 209, 212, fn. 6 (3rd Cir., 1950). But we find no reversible error in granting Instruction 4 because this ground for objection was not raised before the trial court. We will not consider 'error unless proper and timely objection is taken and the grounds of objection are stated with reasonable certainty. *Saunders v. Commonwealth*, 211 Va. 399, 177 S.E.2d 637 (1970); Rule 5:7, Rules of Court.

 Norfolk Southern argues that the court erred in refusing Instruction M which read as follows:

"The Court instructs the jury that it was the duty of the plaintiff, in the exercise of reasonable care, to make use of his experience and the knowledge of his surroundings and the work being done so as to avoid unnecessarily exposing himself to danger, and it was his further duty to use his faculties in the exercise of reasonable care for his own safety and to observe the conditions which existed. If he failed in his duty in any of these respects in the slightest way, then he was guilty of negligence."

The defense of assumption of risk under the Act was abolished in 1939 by amendment to 45 U.S.C.A. § 54 if the injury or death was caused, in whole or in part, by the negligence of the carrier. *Bly v. Southern Ry. Co.*, 183 Va. 162, 168, 31 S.E.2d 564, 567 (1944). Contributory negligence is not a defense under the Act but damages shall be diminished by the jury in proportion to the amount of negligence attributable to the employee. 45 U.S.C.A. § 53.

The defenses of contributory negligence and assumption of risk frequently overlap and it is often difficult to distinguish between them. Carelessness is the essence of contributory negligence while venturousness is the chief characteristic of assumption of risk. *Monk, Adm'r v. Hess, Adm'x*, 213 Va. 244, 191 S.E.2d 229 (1972).

The vice in Instruction M is that it commingles elements of assumption of risk, which was not a defense under the circumstances disclosed by the evidence here, and contributory negligence, which could properly be shown to diminish damages. For this reason the trial court did not err in refusing this instruction.

 The defendant also says that the trial court erred in not granting an instruction which would have advised the jury that the award,

if any, was not subject to income taxes and that the jury "should not, therefore, add or subtract taxes in fixing the amount of any award."

We have had occasion to consider a closely related question in *Hoge, Adm'r v. Anderson*, 200 Va. 364, 106 S.E.2d 121 (1958), where we held that the court did not err in refusing to allow the defendant to show the "net" pay of the injured party after his "gross" earnings were introduced in evidence.

We were aware then, as we are now, that there is a difference of opinion between jurisdictions on the propriety of taking income taxes into consideration in fixing damages in personal injury or death actions. See Annot., 63 ALR 2d pp. 1393-1425, and ALR 2d Later Case Service. But the same rationale which we applied in *Hoge* on the evidentiary question is equally applicable to the proffered instructions here, so we find no error.

■ We, likewise, find no error in the trial court's refusal to grant Instruction J. which provided:

"The Court instructs the jury that the duty to furnish a reasonably safe place to work is a duty to furnish a place reasonably fit for the particular use which the plaintiff was making of the locomotive at the time of his injury."

"The duty of providing a reasonably safe place in which to work, while a continuing one, does not obligate the Railway to keep the place of work safe at every moment where such safety may depend on the *due performance of work by the plaintiff and his fellow workmen. The duty of providing a reasonably safe place in which to work is not applicable where the workmen in the progress of their work render the place unsafe.*" (emphasis supplied)

The italicized language, we think, makes the defect in the instruction apparent. This is so because under the Act the defendant is responsible for negligence of its "officers, agents or employees," 45 U.S.C.A. § 51, and the plaintiff did not assume the risk of injury by negligence of a fellow employee. 45 U.S.C.A. § 54.

■ Now we will consider the error assigned by the defendant to the trial court's rulings on the admissibility of evidence.

The defendant says the court erred in admitting the evidence of Jonas Garris, a machinist employed by the Norfolk and Western Railway Company, and Otis L. Elliott, a machinist employed by the Norfolk and Portsmouth Beltline Railroad, concerning the standards and

practices in the shops of their employers relating to cleaning locomotives before bringing them into the shop for overhaul. It argues that the admission of this testimony violated the rule laid down in *Richmond Locomotive Works* v. *Ford*, 94 Va. 627, 27 S.E. 509 (1897), and *Southern Ry. Co.* v. *Mauzy*, 98 Va. 692, 37 S.E. 285 (1900), that evidence of a custom or procedure of a particular person or company is not admissible to show that a different method in another shop is better and safer. But even if the trial court erred in admitting this testimony, a question upon which we need not pass, that error was cured by the subsequent testimony of defendant's witness which established that defendant's standards and practices were not essentially different from those as testified to by Garris and Elliott.

Defendant's next evidentiary question arises from an exchange during Rayburn's testimony. Rayburn had testified at length about the oily condition of the locomotive before it was brought into the shop. He had stated that the "hood was drenched with oil," that there was "oil down the side and on the running board was drenched with oil and the engine itself was just drenched with Diesel cylinder oil, which I might add is the slipperiest oil in the world."

When he was questioned about reporting this condition to his superiors the following transpired:

"Q All right, what supervisors did you speak with? A The first one that I mentioned it to was Mr. Robert Murrell, the shop foremon, and I suggested to Mr. Murrell that the engine should be cleaned before it came in for dismantling, because it was in my opinion unsafe to work on.

"MR. PRINCE: I object to that, your honor.

"MR. McMURRAN: Well, your honor—

"MR. MILLER: He's allowed to state his impression.

"THE COURT: I'll overrule it."

Defendant now argues that this ruling by the court was reversible error because the court permitted Rayburn to express an opinion on the ultimate issue to be submitted to the jury.

It is well settled law in Virginia that expert or opinion evidence is inadmissible on matters of common knowledge or as to those matters to which the jury is as competent to form an intelligent and accurate opinion as the witness. *Grasty* v. *Tanner*, 206 Va. 723, 726, 146 S.E.2d 252, 254 (1966).

But the error in this instance was, in our opinion, harmless error. Rayburn's detailed testimony about the oily condition of the locomotive had already been presented to the jury. If the jury accepted this testimony as true, and their verdict indicates that they did, fair minded men could reach only one conclusion, namely that the oily condition of the locomotive made it an unsafe place to work.

■ We find no merit to the defendant's claim that the jury's verdict of $125,000 was excessive. Plaintiff was 50 years of age. He was hospitalized on three occasions for a total of 54 days. At the time of his injury his daily wage was $42.50. His lost wages from the time he was injured to the date of trial amounted to approximately $14,000. Dr. Stromberg indicated that a sufficient length of time had elapsed for Rayburn to have had a return of function if he was going to regain it. The plaintiff testified that his soreness, pain and loss of function still persisted at the time of trial. Since reasonable men might conclude that $125,000 is just compensation for such injuries, we will not disturb the verdict. *Norfolk and Western Ry. Co. v. Keatley*, 211 Va. 507, 178 S.E.2d 516 (1971).

We have examined and likewise find no merit to the defendant's other assignments of error.

*Affirmed.*