THOMAS L. ROBINSON v. WHITLEY MOVING AND STORAGE, INC., WESTERN ELECTRIC COMPANY, AND SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY

No. 7710SC693

(Filed 29 August 1978)

1. Master and Servant § 3— mover of manufacturer's goods—relationship of independent contractor and employer

A contract between defendant moving company and defendant Western Electric established the relationship of employer and independent contractor

Robinson v. Moving and Storage, Inc.

where the evidence tended to show that defendant moving company was in the business of moving personal property for the general public and possessed the necessary skills, knowledge, and expertise to execute that purpose; the materials, including the bay that fell on plaintiff thereby giving rise to this action, were under the sole control of defendant moving company; the work contracted to be performed was to be paid for by Western Electric according to the contract on the basis of pounds moved and equipment to be used; defendant mover was free to use the necessary personnel to complete the work contracted for; and Western Electric had no duties under the contract to supervise defendant mover.

**2. Negligence § 27— safety code—evidence inadmissible**

In general, safety codes not having the force and effect of law are not admissible; therefore, in an action by plaintiff to recover for injuries sustained when a switching bay fell on him while it was being moved, the trial court did not err in excluding from evidence a pamphlet of defendant Western Electric which detailed the procedures for handling switching bays such as the one that fell on plaintiff.

**3. Evidence § 36— statement by defendant's employee—hearsay—exclusion proper**

In an action to recover for injuries sustained by plaintiff when a switching bay fell on him while it was being moved, the trial court did not err in excluding an undated report by the job supervisor for defendant Western Electric in which the supervisor related what jobs he had assigned to whom at the time of the accident, since plaintiff did not carry his burden as to the date the report was written, and the statement was thus merely a narration of past events and therefore hearsay.

**4. Negligence § 57— owner of building in which the injury occurred—summary judgment proper**

In an action by plaintiff to recover for injuries sustained when a switching bay, owned by defendant Western Electric and moved by defendant moving and storage company into defendant Southern Bell's building, fell on plaintiff, the trial court properly granted summary judgment for Southern Bell, since the evidence tended to show that no employee of Southern Bell gave any instructions for the moving of the bay; there was nothing about the building itself or the room in which the bay was placed which caused it to fall; and there was no genuine issue as to any material facts in dispute between plaintiff and Southern Bell.

APPEAL by plaintiff from *McLelland* and *Godwin, Judges.* Judgments entered 9 December 1974 and 25 March 1977 in Superior Court, WAKE County. Heard in the Court of Appeals 25 May 1978.

Plaintiff filed his complaint 18 April 1973 against defendants, Whitley Moving & Storage, Inc. (Whitley), Western Electric Company (Western Electric), and Southern Bell Telephone and

Telegraph Company (Southern Bell) alleging negligence as to each defendant and seeking damages for his injuries. All of the defendants answered denying liability, with Western Electric and Southern Bell crossclaiming for indemnity pursuant to contract against Whitley. Judge McLelland granted Southern Bell's motion for summary judgment. Plaintiff received certain compensation from Whitley on a covenant not to sue resulting in a voluntary dismissal.

Plaintiff testified that on the morning of 17 July 1972, he reported to Manpower, Inc., where he was directed to go to the Southern Bell Building in Raleigh; he arrived at the loading dock and after a break, he was directed by an employee of Whitley to go with another man who had been told to get some dollies; he was not told what he was supposed to do, but went to the storage floor with Jerry Brown, an employee of Whitley, to wait by a switching bay; and plaintiff was still standing there when Brown tipped a large switching bay (weighing 1,600 pounds) over on the plaintiff while trying to move it.

Manuel Betancourt, a job supervisor for Western Electric, testified, as a hostile witness, to the procedure involved in getting the bays to the Southern Bell Building and installing them. Certain of the bays were brought on the truck to the building pursuant to a written request and stored on a separate floor until the time for installation at Betancourt's convenience.

The following stipulations were read into evidence:

"(3) That the plaintiff was injured when a piece of automatic switching equipment called a 'line link frame' 'switching frame', 'double bay', or a 'double switching bay' (hereinafter called Double Bay), turned over on him.

(4) That the Double Bay which fell on the plaintiff was eleven feet five and one-half inches (11' 5½") high, five feet seven and one-half inches (5' 7½") wide, and ten and one-half inches (10½") thick, and weighed one thousand six hundred pounds (1,600 lbs.).

(5) That Western Electric Company manufactured the equipment for integration with the existing operating equipment of Southern Bell Telephone and Telegraph Company; that the equipment was transported by common carriers

other than Whitley Moving and Storage, Inc. from Western Electric Company's manufacturing facility to Whitley Moving and Storage, Inc.'s warehouse located at 3006 Industrial Drive, Raleigh, North Carolina; that upon delivery of the equipment to Whitley Moving and Storage, Inc.'s warehouse, Whitley Moving and Storage, Inc., issued a warehouse receipt; that the equipment was thereafter stored by Whitley Moving and Storage, Inc. at its warehouse; and, that on July 12, 1972, Manuel Betancourt ordered the equipment moved into the telephone building.

(6) That Whitley Moving and Storage, Inc. had a standard transportation services contract with Western Electric Company from the 22nd day of May, 1972, through the 3rd day of June, 1974, to receive, pick up, load, transport, unload, and deliver material within a five (5) mile area of the city limits of Raleigh, North Carolina, said contract being Y6751-11.

(7) That Western Electric Company's Order No. 42244 was a job order number covering the equipment movement into the Southern Bell Telephone and Telegraph Building at 121 West Morgan Street, Raleigh, North Carolina, on July 17, 1972, when the accident occurred.

(8) That on July 17, 1972, the Double Bay piece of the equipment was transported by Whitley from its warehouse to the Southern Bell Telephone Building, and was at the time of the accident resting on a dolly belonging to Whitley in a large room belonging to Southern Bell Telephone and Telegraph Company.

(9) That during the transporting of said piece of equipment, no Western Electric Company employee was involved in the transporting of the equipment from Whitley's warehouse to the storage room in the telephone building; that Western Electric Company maintains an office and two storage rooms in the telephone building, but the incident did not occur in the portion of the building used by Western Electric Company.

(10) That the plaintiff was treated by Dr. Robert B. Nelson, Orthopaedic Surgeon, for a miltiple fracture of the pelvis."

At the close of plaintiff's evidence defendant Western Electric moved for a directed verdict pursuant to Rule 50 for the reasons:

"[N]o. 1, it appears from the evidence offered by plaintiff and by the introduction of the contract into evidence, that the defendant Whitley Moving and Storage Company was an independent contractor, and any evidence of negligence on the part of the defendant Whitley, if any, would not be imputed to the defendant Western Electric. Secondly, defendant contends, and I believe the record will disclose, that the plaintiff has failed to show any negligence, active or passive, on the part of the defendant Western Electric Company in any of the respects alleged by plaintiff in the Complaint."

Judge Godwin granted the motion for a directed verdict. Plaintiff's motion for a new trial was denied. Plaintiff appealed.

*Bailey, Dixon, Wooten, McDonald & Fountain, by Wright T. Dixon, Jr. and Richard G. Chaney, for plaintiff appellant.*

*Teague, Johnson, Patterson, Dilthey & Clay, by I. Edward Johnson and Robert W. Kaylor, for defendant appellee Western Electric Company.*

*Robert L. Emanuel, for defendant appellee Southern Bell Telephone and Telegraph Company.*

ERWIN, Judge.

The first question presented by the plaintiff for our determination is: Was it error for the trial court to grant the defendant's (Western Electric's) motion for a directed verdict, taking the evidence presented at the trial in the light most favorable to the plaintiff?

The plaintiff contends that under the terms of the contract as well as the actual course of performance, Whitley was a servant of Western Electric and not an independent contractor. We do not agree.

Where as here, the plaintiff presented his evidence and rested his case, defendant's motion for a directed verdict in its favor is the procedure prescribed by Rule 50(a) of the Rules of

Civil Procedure, G.S. 1A-1, for testing the sufficiency of the plaintiff's evidence for submission to the jury. This is substantially the same question as that formerly presented by a motion for judgment of involuntary nonsuit under G.S. 1-183. *Bowen v. Rental Co.*, 283 N.C. 395, 196 S.E. 2d 789 (1973), and *Kelly v. Harvester Co.*, 278 N.C. 153, 179 S.E. 2d 396 (1971).

Plaintiff offered into evidence the contract between Western Electric and Whitley. The contract provided in part:

"2. RESPONSIBILITY. a. The Contractor shall have the sole and exclusive care, custody, and control of all goods, wares, merchandise and material from the time it is tendered to the Contractor, its agents or servants, until the same shall be delivered to and accepted by the Company or its associated companies in the Bell System as hereinafter defined or designated agents thereof.

\*    \*    \*

4. LIABILITY. All personnel furnished by the Contractor pursuant to this contract shall for all purposes be considered as employees of the Contractor. The Contractor shall indemnify and save the Company and its associated companies in the Bell System harmless from any and all damage, loss, interest, expense, court costs, and counsel fees arising out of any and all claims that may be made against the Company or its associated companies in the Bell System by the Contractor's employees or any other persons for injuries to persons or damage to property resulting from acts or omissions of the Contractor or of the Contractor's employees or agents and shall, if so directed by the Company, undertake the settlement and defense of any such claim. . . ."

The plaintiff's evidence tended to show that he had no contact with anyone employed by Western Electric and that he received his instructions from Jerry Lee Brown, employee of Whitley. Southern Bell was not involved in the transporting of the equipment from Whitley's warehouse to the storage area in Southern Bell's building.

Our Supreme Court held in the case of *Hayes v. Elon College*, 224 N.C. 11, 16, 29 S.E. 2d 137, 140 (1944), as follows:

"What, then, are the elements which ordinarily earmark a contract as one creating the relationship of employer and independent contractor? The cited cases and the authorities generally give weight and emphasis, amongst others, to the following:

The person employed (a) is engaged in an independent business, calling, or occupation; (b) is to have the independent use of his special skill, knowledge, or training in the execution of the work; (c) is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; (d) is not subject to discharge because he adopts one method of doing the work rather than another; (e) is not in the regular employ of the other contracting party; (f) is free to use such assistants as he may think proper; (g) has full control over such assistants; and (h) selects his own time." (Citations omitted.)

[1] Here the terms of the agreement are in writing and are clearly set forth. What relationship between the parties was created by the contract? Whether it was that of master and servant or that of employer and independent contractor is a question of law. *Beach v. McLean*, 219 N.C. 521, 14 S.E. 2d 515 (1941).

Whitley was in the business of moving personal property for the general public, possessing the necessary skills, knowledge, and expertise to execute that purpose. The materials, including the bay that fell on the plaintiff, were under the sole control of Whitley. The work contracted to be performed was to be paid for by Western Electric according to the contract on the basis of pounds moved and equipment to be used. Whitley was free to use the necessary personnel to complete the work contracted for.

Western Electric had no duties under the contract to supervise Whitley nor did the plaintiff's other evidence reveal such duty.

From the record before us, we conclude that the contract between Whitley and Western Electric established the relationship of employer and independent contractor. *See Brown v. Texas Co.*, 237 N.C. 738, 76 S.E. 2d 45 (1953).

[2] The plaintiff assigned error to the trial court's ruling excluding certain evidence of the plaintiff relating to Western Elec-

tric's duties to the plaintiff under the circumstances of this case. Plaintiff alleged that defendant Western Electric "knew or, in the exercise of due care, should have known that the defendant, Whitley, was using improper, inadequate and inherently dangerous work procedures in moving heavy and cumbersome equipment in a limited space area." In support of this allegation, plaintiff attempted to offer into evidence Exhibit No. 12, "consisting of three pages; being the 'Installation Engineering Handbook 30 of the Western Electric Company, Inc., Service Division,'" detailing the procedures for handling switching bays such as the one that fell on the plaintiff. The plaintiff contends: (1) that it was some evidence on the proper standard of care to be used in moving the bays; and (2) that it constituted evidence that Western Electric knew what the standard of care was at the same time that it knew what procedures Whitley was in fact using.

In general, safety codes not having the force and effect of law are not admissible. *Hughes v. Vestal,* 264 N.C. 500, 142 S.E. 2d 361 (1965); *Swaney v. Steel Co.,* 259 N.C. 531, 131 S.E. 2d 601 (1963); and *Sloan v. Light Co.,* 248 N.C. 125, 102 S.E. 2d 822 (1958). We overrule this assignment of error.

[3] We do not agree that the trial court erred in excluding the undated report of Manuel Betancourt, employee of Western Electric. The report appears to be a statement in part as to what happened at the time of the accident given to witness Betancourt by one J.C. Kornegay, who was not called as a witness during the course of the trial by plaintiff. The part the plaintiff considers as an admission against Western Electric reads:

"[I] had instructed the foreman of the crew, a Mr. Johnson, that at all times, he should have at least three men for moving frames. I had assigned N. S. Barbour to handle the first floor so as to instruct them where to place the frames, and the manner in which they should be handled. . . ."

In *Hubbard v. R. R.,* 203 N.C. 675, 678, 166 S.E. 802, 804 (1932), Chief Justice Stacy stated the rule of evidence relevant here as follows:

"It is the rule with us that what an agent or employee says relative to an act presently being done by him within

the scope fo his agency or employment, is admissible as a part of the *res gestae,* and may be offered in evidence, either for or against the principal or employer, but what the agent or employee says afterwards, and merely narrative of a past occurrence, though his agency or employment may continue as to other matters, or generally, is only hearsay and is not competent as against the principal or employer." (Citations omitted.)

The plaintiff had the burden to establish the report in the manner required by our rules of evidence and our case law. The plaintiff did not carry his burden as to the date the report was written. To us, the statement is merely a narration of past events and is hearsay.

[4]   The plaintiff's last question relates to Judge McLelland's granting defendant Southern Bell's motion for summary judgment pursuant to Rule 56 of the Rules of Civil Procedure. The trial court found as required by Rule 56 that there was no genuine issue as to any material fact as between plaintiff and defendant Southern Bell and dismissed the action against Southern Bell. The record compels us to agree that the summary judgment entered by Judge McLelland was proper.

The standard for summary judgment is fixed by Rule 56(c):

"[T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with. the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law."

Our Court held in *Pridgen v. Hughes,* 9 N.C. App. 635, 638, 177 S.E. 2d 425, 427 (1970):

"While neither the federal rules nor the North Carolina rule excludes the use of the procedure in negligence actions, it is generally conceded that summary judgment will not usually be as feasible in negligence cases where the standard of the prudent man must be applied. Barron and Holtzoff, Federal Practice and Procedure (Wright Ed.) Vol. 3, § 1232.1; Gordon, The New Summary Judgment Rule in North Carolina, *supra.* But summary judgment is proper where it

appears that even if the facts as claimed by the plaintiff are proved, there can be no recovery, Barron and Holtzoff, Federal Practice and Procedure, *supra*, thus providing a device for identifying the factually groundless claim or defense."

*See also Page v. Sloan*, 281 N.C. 697, 190 S.E. 2d 189 (1972); *Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823 (1971); and *Forte v. Paper Co.*, 35 N.C. App. 340, 241 S.E. 2d 394 (1978), *cert. denied*, 295 N.C. 89, 244 S.E. 2d 258 (1978).

The plaintiff alleged:

"XIII. That the defendant, Southern Bell, was negligent in the following particulars, among others, to wit:

1. failing to provide proper work and storage area for equipment installation;

2. failing to provide proper lifting equipment for bays which were being temporarily stored and realigned;

3. failing to provide those involved in the moving process with the moving, lifting and holding equipment available and

4. failing to provide on-site supervision of the unskilled personnel handling the moving."

Southern Bell answered denying all of the allegations. Southern Bell answered interrogatories of the plaintiff as follows:

"1) With respect to plaintiff's Interrogatory No. 5 of July 26, 1973 as limited by order of the Court, Southern Bell Telephone and Telegraph Company is aware of no other accidents occurring in connection with the delivery and installation of switching bay equipment to the Company premises on West Hargett Street, Raleigh, N. C., between June 8, 1972, and July 17, 1972, and has no reports on file with the exception of that relating to the injuries, accident experienced by plaintiff on July 17, 1972, a report of which is dated July 19, 1972, a copy of which report is hereto attached.

2) With respect to plaintiff's Interrogatory No. 8 of July 26, 1973, Southern Bell Telephone and Telegraph Company

neither owned nor provided any equipment for the delivery and installation of switching bay equipment to its premises on West Hargett Street, Raleigh, N. C., on July 16, 1972, and is not aware of the amount of such equipment owned or provided by Western Electric Company for such purposes."

The plaintiff, Southern Bell, and Western Electric stipulated as set out:

"7. That on July 17, 1972, one piece of equipment (sometimes called a frame, double bay or switching bay) was transported by Whitley from its warehouse to a large room used for storage in said Southern Bell building; that said piece of the equipment was to remain in the large storage room until removal to a different floor and location in the building for installation; and that in the course of transporting said piece of the equipment, an alleged incident occurred in which the plaintiff Robinson was allegedly injured.

8. That during the transporting of said piece of equipment Whitley's employees were engaged in moving of said equipment and that no Western Electric or Southern Bell employee was involved in the transporting of the equipment from Whitley's warehouse to the storage room in Southern Bell's building.

9. That the said piece of the equipment alleged to have fallen on the plaintiff Robinson, one of the movers for Whitley engaged to transport said piece of the equipment from Whitley's warehouse to the storage room in Southern Bell's building, weighed 1,630 pounds, was 11 feet 5½ inches high, was 5 feet 7½ inches wide and 10½ inches thick.

10. That for the purpose of this action Southern Bell at the time of the alleged incident was the owner of the piece of equipment which allegedly fell on and injured the plaintiff Robinson.

11. That Western Electric maintains an office and tool storage room in the said Southern Bell building, but the alleged incident did not occur in those portions of the Southern Bell building used by Western Electric."

The deposition of Jerry Lee Brown reveals:

"With regard to instruction or supervision from Southern Bell or Western Electric personnel on the premises, whenever we carried the machines up there a man named Manuel would take down the numbers on the machines and send them to Mr. Whitley. He would call Mr. Whitley and tell him which numbers to bring so he could set them up, and when we got there he would tell us which floor to put it on. He would come down to the truck and write down the number and we would carry them to the floor he told us. We received no instructions from him except as to where the bays should be placed. He did not advise or instruct as to how they should be handled or moved.

No person from Southern Bell undertook to instruct or advise us as to where to place the bays or how they should be handled.

*     *     *

This bay was taken from the loading dock and placed in a room on the second floor. One end of that room already had bays set up in it, but there wasn't anything in the end we were putting these in . . . It was just like a big open space with columns, and a couple of columns holding the roof up, and along where that one fell at there was a file cabinet. We had put some other stuff in there previously.

Mr. Robinson assisted me in moving it into this room on the second floor. Once we got it there I put the handtruck underneath it and lifted it up and when I did it went off balance and started falling. The accident occurred when I had just brought it into the room and was in the process of trying to remove it off of the dolly. The bay was laying on the side on top of the dolly, and the top of it was higher than me and Mr. Robinson, I had to look up to see the top of it. We were in the process of removing it from the dolly and placing it on the floor in this large open room. The wooden part of the crate was still around it, and it was my understanding that it was not to be installed in that place, but was to be installed on the third floor.

When we lifted it up, the man that was supposed to get the dolly would wait at the end until it was off the dolly, but instead Mr. Robinson was at the side waiting for it to get off

the dolly. I had not observed that prior to the time I started lifting up on the end. We weren't too far into the room at this point.

I didn't see anyone else in the room except a lady sitting at a desk about 20 feet away. I don't know who she was or who she worked for.

\*    \*    \*

At no time were we instructed or supervised by either Southern Bell's people or Western Electric's people except we were told where the bays were to be put. No one instructed us on the part of our employer. . . ."

The plaintiff's deposition showed the following:

"[W]hen I arrived I saw this truck with these bays. There was one guy there and we waited for some others to come back from a snack bar. There were a total of four men. One of them said I would be working with this dude I went upstairs with. I didn't know either one of them. He didn't tell me what I was to do when I got upstairs. I went with this other man and he told me to wait there by that bay.

He came back with a device that looked like a forklift but you use your hands. It looked like a ladder with two arms extending out of the bottom, and I think there were wheels at the bottom. He brought it and put it under the front of the bay and when he put it under the front of the bay it started pulling up on it or something, and the thing fell on me. I think he put it under the bay and started pulling on it. The only time I touched this apparatus at all was when it started falling on me. I really didn't know what was going on, really."

The plaintiff contends that defendant Southern Bell was the owner of the building wherein the accident occurred, and further, that defendant Southern Bell would benefit from the installation being done was sufficient to show that Southern Bell retained dominion over the work area in question to place upon it the duty to take necessary precautions to prevent injury to plaintiff.

The plaintiff's deposition showed:

"Where these bays were looked like an empty building that they were putting things in. The floor was solid. It

didn't give. There was plenty of light. The bay that was right in front of me did not appear to be uneven or swaying back and forth or in any way unsecure, but coming into a place where so much was going on you wouldn't take a real hard look. There was nothing about the room itself or the building that caused the bay to fall."

From the record, we conclude that there were no genuine issues as to any material facts in dispute between the plaintiff and the defendant Southern Bell, and summary judgment was properly entered.

The results are: summary judgment entered by Judge MCLELLAND is affirmed; the directed verdict entered by Judge GODWIN is affirmed.

Judgments affirmed.

Judges BRITT and ARNOLD concur.