**Richmond**

WOODROW WILSON PULLEN

v.

FREDERICK F. NICKENS

Record No. 810396.

MICHAEL L. McCOY

v.

FREDERICK F. NICKENS

Record No. 810405.

December 2, 1983.

Present: All the Justices.

*Joseph Dyer (Siciliano, Ellis, Sheridan & Dyer*, on brief), for appellant. (Record No. 810396.)

*Robert T. Hall (Hall, Surovell, Jackson & Colton, P.C.*, on brief), for appellee. (Record No. 810396.)

*Thomas C. Palmer, Jr. (Brault, Geschickter, Palmer & Grove*, on brief) for appellant. (Record No. 810405.)

*Robert T. Hall (Hall, Surovell, Jackson & Colton, P.C.*, on brief), for appellee. (Record No. 810405.)

COCHRAN, J., delivered the opinion of the Court.

Frederick F. Nickens initiated this action in the trial court against Michael L. McCoy and Woodrow Wilson Pullen for personal injuries allegedly resulting from a motor vehicle accident proximately caused by the negligence of both defendants. The trial court entered final judgment on the jury verdict in favor of Nickens against both defendants in the amount of $30,000. We granted appeals on the separate petitions of Pullen and McCoy, granted leave to file a joint appendix for both appeals, and consolidated the appeals for oral argument.

There is no material conflict in the evidence. The accident occurred about 2:00 p.m. on May 24, 1978, on Route 17, a two-lane primary highway, approximately two-tenths of a mile south of its intersection with Route 245 and eight miles north of Warrenton. The pavement was wet and contained a film of dirt along the edge. Two employees of the Virginia Department of Highways and Transportation (Highway Department) had been engaged in a maintenance operation known as "pulling the shoulder." In this operation, a grader pulled loose stone to the edge of the pavement, and a dump truck with a blade followed to clear the pavement of debris. As the grader moved around a curve, Pullen stopped the dump truck, which he was operating, immediately behind it; both vehicles were headed north in the northbound lane on the curve

which was obscured because of heavy underbrush. The grader was still moving at the time of the accident.

Nickens, driving an automobile south in the southbound lane, reduced his speed to 30 miles per hour before passing the Highway Department vehicles. McCoy, operating his pickup truck north in the northbound lane at 55 miles per hour, the posted speed limit, came around the curve, saw the Highway Department truck in the highway, and could not stop. His truck swerved across the double line in the center of the highway and struck Nickens's car in the southbound lane about 75 feet south of the Highway Department truck.

The investigating officer, who arrived several minutes after the accident, testified that the Highway Department truck had four-way flashers and a yellow beacon light on and was visible from the south for a distance of 381 feet. Although McCoy told the officer he applied his brakes when he observed the truck in his lane, the officer saw no evidence of braking. At trial, McCoy testified that when he applied his brakes, his right wheels went off the pavement and his truck then veered to his left into the southbound lane.

There was evidence that a Highway Department "ROAD WORK AHEAD" warning sign for northbound traffic had been placed near the point where the work of "pulling the shoulder" began at the corporate limits of Warrenton, more than eight miles south of the accident site, and that a similar sign for southbound traffic had been placed near the point where the work was to end at Old Tavern, north of the site. McCoy saw the warning sign at Warrenton and the light film of dirt on the highway but did not slow down because he assumed the workers were no longer working. He had driven this road 40 to 45 times before the accident.

Pullen had just stopped his truck, which was painted yellow, behind the grader and was preparing to get out with a flag to direct traffic around the curve when he heard the collision and saw Nickens's car go in the ditch.

John F. Coates, a traffic engineer employed in the Culpeper office of the Highway Department, was called as a witness for Nickens. Over Pullen's objection, Coates introduced in evidence as Exhibit 6 three pages from a Highway Department publication entitled "Typical Traffic Control for Work Area Protection," which he said provided guidelines for employees of the Department engaged in maintenance work. The first page introduced

contained only the title of the publication and the full name of the Highway Department, the second, numbered 20, contained only the subtitle, and the third, numbered 21, contained a diagram and notes describing typical traffic control at a work area for work between the pavement and the ditch line. Coates testified that the diagram on page 21 applied only to a static operation, that the cones shown on the diagram were not required for a moving operation, and that the placing of a warning sign 500 to 800 feet beyond each end of the moving operation in the present case was all that was required.

On appeal, Pullen contends that the trial court committed reversible error in admitting Exhibit 6. He further argues that the court erred in ruling that he was not immune from civil liability under the provisions of Code § 46.1-248, and in giving the jury an instruction that applied to him certain general negligence principles when there was no evidence upon which such an instruction could be based. Pullen also says the trial court erred in refusing to grant a mistrial when counsel for Nickens engaged in improper closing argument.

McCoy's sole assignment of error relates to the same closing argument of counsel for Nickens. McCoy contends the court erred in failing either to grant a mistrial upon the allegedly improper argument or to instruct the jury to disregard this argument.

## 1. Argument of Counsel.

■ We consider first the question raised by both Pullen and McCoy relating to the closing argument of Nickens's counsel. It appears that counsel was less than halfway through his argument when he told the jury that if the concurrent negligence of Pullen and McCoy proximately caused the accident, then each was liable for the whole award, and it was for the courts and the parties to determine the apportionment, if any. He asked the jury to leave that "to the operation of the Court and to contract." No objection was taken to this argument before its conclusion. During the continuation of the argument, however, McCoy's counsel objected to the method and determination of damages suggested by Nickens's counsel.

At the conclusion of the argument, Pullen's counsel moved, with McCoy's counsel uniting in the motion, that the trial court grant a mistrial on the ground that the argument of Nickens's counsel im-

properly injected insurance into the case. The court denied the motion, but to prevent the jury from being misled it advised the jury that the argument of counsel was not evidence and that the jury must decide the case on the evidence. No objection was taken to this admonition. In oral argument before us, counsel for McCoy conceded that as a matter of trial tactics no objection to the form of the court's cautionary instruction was taken.

Counsel for Nickens, while conceding that his argument perhaps may have been inappropriate and ill-advised, denied that it raised the specter of insurance. Without condoning the argument, we do not reach its merits because of the failure of opposing counsel to make contemporaneous objection. Rule 5:21. If counsel believes that an argument requires or justifies a mistrial, he has the duty to move promptly before conclusion of the argument so that the trial court may determine what corrective action, if any, should be taken. *See Russo* v. *Commonwealth*, 207 Va. 251, 256-57, 148 S.E.2d 820, 824-25 (1966), *cert. denied*, 386 U.S. 909 (1967). The trial court often may deny the motion for a mistrial but may admonish the jury to disregard what has been improperly argued. The decision of the trial court is within its sound discretion and an admonition is generally deemed to be sufficient. *See Cape Chas. Flying Ser.* v. *Nottingham*, 187 Va. 444, 455-56, 47 S.E.2d 540, 545-46 (1948). Here, opposing counsel not only failed to make contemporaneous objection but also deliberately refrained from objecting to the general admonition which the trial court gave the jury after objection to the argument was made. *Cf. Reid* v. *Baumgardner*, 217 Va. 769, 774, 232 S.E.2d 778, 781 (1977). We hold that the objection was waived.

## 2. The Effect of Code § 46.1-248.

Code § 46.1-248 provides in pertinent part as follows:

(a) No vehicle shall be stopped in such manner as to impede or render dangerous the use of the highway by others, except in the case of an emergency as the result of an accident or mechanical breakdown. . . .

* * *

The provisions of this section shall not apply to any vehicle owned or controlled by the Commonwealth of Virginia, Department of Highways and Transportation,

or units of local government including counties, cities and towns, while actually engaged in the construction, reconstruction or maintenance of highways.

Pullen argues that the exception in the statute afforded him complete immunity from civil liability for any acts of negligence he committed during his performance of highway maintenance work. He says the legislative intent is clear when the language of analogous statutes is examined. Thus, Code § 46.1-249 exempts mail carriers from the provisions of § 46.1-248, but expressly provides that they shall not be relieved from civil liability for negligence. Code § 46.1-199, which exempts police vehicles from speed limitations, and Code § 46.1-226, which exempts law-enforcement, fire-fighting, rescue vehicles, and ambulances from certain traffic laws expressly provide that the exemptions do not release the operators of such vehicles from civil liability for negligence.

The Motor Vehicle Code was revised and reenacted in 1958. Acts 1958, c. 541. In this revision, Code § 46.1-248 included an exemption from the provisions of the section only for vehicles owned or controlled by the Commonwealth of Virginia, Department of Highways. In the same revision, §§ 46.1-199, -226, and -249 contained the provisions disclaiming release of civil liability for negligence. The omission of the disclaimer from § 46.1-248, therefore, cannot be construed to have been inadvertent. We believe, however, that the omission reflected the legislative intent to have any civil liability of the operators of Highway Department vehicles in highway work depend upon the applicability of principles of sovereign immunity.* By subsequent amendment, the vehicles of "units of local government including counties, cities and towns" were added to the exemption that previously had applied only to Highway Department vehicles. Acts 1977, c. 284.

Pullen argues that the exemption provision of § 46.1-248 is meaningless if it is not construed to exempt him from civil liability. We do not agree. The provision gives exemption from the criminal sanctions otherwise applicable. Under Code § 46.1-16.01 violation of the provisions of § 46.1-248 constitutes a "traffic infraction," defined in § 46.1-1(40), and punishable by a fine of not more than $100.

---

* Sovereign immunity has not been pleaded in the pending case and is not an issue.

■ Violation of § 46.1-248 constitutes negligence *per se* as a general rule, and this negligence will support the recovery of damages if it was a proximate cause of the injury. *Baxley* v. *Fischer*, 204 Va. 792, 798, 134 S.E.2d 291, 295 (1964). Failure of Pullen to comply with the statute, however, does not constitute negligence *per se* in view of the exemption. *See Yates* v. *Potts*, 210 Va. 636, 640, 172 S.E.2d 784, 787 (1970), *cited with approval* in *Smith* v. *Lamar*, 212 Va. 820, 823, 188 S.E.2d 72, 74 (1972). We hold that Pullen is held to the common-law standard of reasonable care under the circumstances. If he failed to exercise such care and his failure was a proximate cause of injury to Nickens he is liable in damages.

The trial court correctly ruled that Pullen's violation of § 46.1-248 did not constitute negligence *per se*. Rather, the jury was instructed that Pullen had a duty "to act as a reasonable and prudent man in conducting himself on a public highway and to exercise due care for other uses of the roadway."

■ Since the judgment against Pullen must be reversed and the case remanded for a new trial as to him for reasons hereinafter stated, we observe that this instruction set forth abstract principles of negligence without relating any specific act of negligence to Pullen. An instruction should be based upon the evidence in the case rather than upon general principles of negligence. *See Gary* v. *Artist*, 186 Va. 616, 624, 43 S.E.2d 833, 837 (1947); *Norfolk and Western Railroad Co.* v. *Burge*, 84 Va. 63, 67, 4 S.E. 21, 24 (1887).

### 3. Admissibility of Exhibit 6.

■ Pullen contends, as he did at trial, that the trial court erred in admitting in evidence as Exhibit 6 certain guidelines promulgated by the Highway Department. Inexplicably, he failed to designate this exhibit to be printed as part of the Appendix as required by Rule 5:37. Nevertheless, the contents of the exhibit were adequately described in testimony that is included in the Appendix. This testimony reveals that there was considerable confusion on the part of opposing counsel and the court as to what was included in the exhibit.

The record clearly discloses the contents of the three pages comprising Exhibit 6. There was another page, however, numbered 22, referred to in the testimony as relating to mowing operations, but this page was never offered in evidence. Coates, the

witness who introduced Exhibit 6, testified that the diagram on page 21 described a static work area. He said that Pullen was engaged in working in a moving work area, and that the cones described in Exhibit 6 would not be required for this work area. He agreed that three footnotes on page 21 of the exhibit referred to cones and that these references were inapplicable to Pullen's moving work area. He testified that the guidelines would require only that a warning sign be placed 500 to 800 feet from the beginning of the work area at each end, even if that meant one sign was eight miles from the accident site.

In *Virginia R. & P. Co.* v. *Godsey*, 117 Va. 167, 83 S.E. 1072 (1915), we held that safety rules of a street car company were inadmissible in evidence in a personal injury action initiated against the company by a passenger. Noting that the rules were intended for the guidance of the company's employees, and that there was no evidence that the plaintiff was aware of them, we held that "a person cannot, by the adoption of private rules, fix the standard of his duty to others." *Id.* at 168, 83 S.E. at 1073. The action, we pointed out, was for violation of duty imposed by law rather than for violation of special rules of which the plaintiff was unaware. *Id.* at 169, 83 S.E. at 1073. *See Bly* v. *Rhoads*, 216 Va. 645, 653, 222 S.E.2d 783, 789 (1976).

Nickens, relying on *Norfolk Southern Ry. Co.* v. *Rayburn*, 213 Va. 812, 195 S.E.2d 860 (1973), says that the employer's guidelines contained in Exhibit 6 were admissible. In that case, an action by an employee against his employer under the Federal Employers' Liability Act, 45 U.S.C.A. § 51, *et seq.*, the employer-railway required all employees to obey the printed safety rules. One of the rules was admitted in evidence; the question on appeal was not its admissibility, but whether a violation of the rule was negligence *per se* or, as we indicated in dicta, merely evidence of negligence to be considered with other evidence.

There is a distinction, however, between this F.E.L.A. action and the present case. In *Rayburn*, safety rules were relevant as a part of the contractual relationship of master and servant. All employees were required to know and obey the safety rules. In the present case, however, there is no evidence that either Nickens or McCoy was aware of the safety guidelines or relied on them.

We acknowledge that although there is substantial disagreement in other jurisdictions as to the admissibility of a defendant's private rules, the majority of jurisdictions hold that they are ad-

missible. *See* Annot., 50 A.L.R.2d 18 (1956). For example, they appear to be admissible in Kentucky, *see Current* v. *Columbia Gas of Kentucky*, 383 S.W.2d 139 (Ky. Ct. App. 1964), but inadmissible in North Carolina. *See Swaney* v. *Peden Steel Co.*, 259 N.C. 531, 131 S.E.2d 601 (1963); *Robinson* v. *Whitley Moving & Storage, Inc.*, 37 N.C. App. 638, 246 S.E.2d 839 (1978). We believe the rationale of *Godsey* is sound, and we reaffirm our holding in that case that private rules are inadmissible in evidence either for or against a litigant who is not a party to such rules.

Nickens says that any error in admitting Exhibit 6 was harmless because Coates testified that all Pullen was required to do was post a warning sign within 500 to 800 feet of the beginning of the work at Warrenton, and the evidence showed that was done. We disagree. The exhibit showed cones surrounding the work area with footnotes explaining the use of the cones. Coates said that cones were not required for the job on which Pullen was engaged, but he also testified about another diagram relating to mowing operations and this diagram was never introduced in evidence. When it is apparent from the record that counsel and the court may have incorrectly referred to page 22 when they meant page 21, we cannot say that Exhibit 6 may not have confused the jury. We hold, therefore, that the trial court committed reversible error in admitting in evidence Exhibit 6.

For the foregoing reasons, we will affirm the judgment against McCoy and we will reverse the judgment against Pullen and remand the case as to him for a new trial consistent with the views herein expressed.

*Affirmed as to Record No. 810405; reversed and remanded as to Record No. 810396.*