# CIRCUIT COURT OF THE CITY OF ROANOKE

Paxton Hawthorne
and Joseph Anthony,
Co-Administrators
of the Estate of
Joyce Hawthorne, deceased,
and Kevin Guthrie

v.

James Ray Lavinder
and Timothy VanMarter

December 29, 2006

Case Nos. CL05001081-00 and CL05001080-00

BY JUDGE CHARLES N. DORSEY

Following recent rulings on Chief Lavinder's pleas, discussed below, are the Court's conclusions regarding the remaining pre-trial motions.

## I. *Officer VanMarter's Plea of Sovereign Immunity*

In Virginia, the doctrine of sovereign immunity shields a government agent from liability for ordinary negligence in the performance of discretionary acts; the doctrine does not apply to ministerial acts or to gross negligence. *See Colby v. Boyden*, 241 Va. 125, 128-29, 400 S.E.2d 184, 186-87 (1991). A police officer engaged in a vehicular pursuit is engaged in a

discretionary act. *Id*. at 129-30, 400 S.E.2d at 187. Even the initial decision to undertake a pursuit is discretionary in nature. *Id*. at 130, 400 S.E.2d at 187.

In this case, Officer VanMarter was in pursuit of a speeding vehicle when he collided with Ms. Hawthorne; therefore, his act was discretionary, not ministerial, in nature.

Plaintiffs distinguish between a "pursuit" and an "overtaking" in arguing that Officer VanMarter's act was ministerial. They argue that an overtaking is merely accelerating to catch up to a vehicle before stopping the vehicle, whereas a pursuit involves the more dangerous activity of chasing a vehicle.

First, *Colby* appears to be using the word "pursuit" as an ordinary word, not as a technical term of police jargon; thus, the ordinary meaning of the word "pursuit" in *Colby* would include the technical meanings of both "pursuit" and "overtaking" as advanced by the plaintiffs.

Furthermore, even if there is such a technical distinction, the following language in *Colby* regarding vehicular "pursuit" applies to the "overtaking" done by Officer VanMarter in the present case:

> [A] police officer, engaged in the delicate, dangerous, and potentially deadly job of vehicular pursuit, must make prompt, original, and crucial decisions in a highly stressful situation. Unlike the driver in routine traffic, the officer must make difficult judgments about the best means of effectuating the governmental purpose by embracing special risks in an emergency situation. Such situations involve necessarily discretionary, split-second decisions balancing grave personal risks, public safety concerns, and the need to achieve the governmental objective. The exercise of discretion is involved even in the initial decision to undertake the pursuit. . . .

*Id*. 241 Va. 125 at 129-30, 400 S.E.2d 184 at 187.

Accelerating to a speed well above the posted speed limit to chase a vehicle that had been clocked doing sixty-three miles an hour in a twenty-five zone in a residential neighborhood and in the darkness of nighttime certainly fits the description above.

For these reasons, the Court grants the plea of sovereign immunity as to any ordinary negligence allegedly committed by Officer VanMarter.

## II. *Policy Evidence*

It is well settled in Virginia that internal policies and procedures, as "private rules," are not admissible to establish a standard of care. *Pullen v. Nickens*, 226 Va. 342, 350, 310 S.E.2d 452, 456 (1983); *Virginia R. & P. Co. v. Godsey*, 117 Va. 167, 168, 83 S.E. 1072, 1073 (1915). Commenting on these two cases, the Supreme Court of Virginia recently stated that "*Godsey* and *Pullen* involved policies and procedures that employees were expected to follow and as such were described as `private rules'." *Riverside Hosp., Inc. v. Johnson*, 272 Va. 518, 636 S.E.2d 416 (2006) (citing *Godsey*, 117 Va. at 168-70, 83 S.E. at 1072-73, and *Pullen*, 226 Va. at 349-51, 310 S.E.2d at 456-57).

In the present case, Roanoke County's policies and procedures are internal private rules that police officers are expected to follow; therefore, they are inadmissible to establish a standard of care.

## III. *Training Materials*

The Supreme Court of Virginia recently distinguished training materials from the internal "private rules" contemplated by *Godsey* and *Pullen*. *See Johnson*, 272 Va. 518, 636 S.E.2d 416. The *Johnson* case dealt with training materials from an entity that was not a party to the litigation. Training materials of a party arguably still fall within the definition of "private rules" as employees are expected to follow them. However, the *Johnson* case still supports the proposition that training materials cannot be used to establish the standard of care, which must be established by expert testimony. The Supreme Court in *Johnson* refused to hold that the trial court erred in admitting the training materials into evidence, but apparently only because (1) limiting instructions were repeatedly given, with the parties agreeing, that the training materials could not be used to establish the standard of care, and (2) no objection was made when an expert who testified referred to the training materials as the basis of her opinion on the standard of care. *See id.*

The case of *Green v. Ingram*, 269 Va. 281, 608 S.E.2d 917 (2005), did not address the issue of whether training materials could be used to establish a standard of care, but addressed the limited issue of whether a jury could reasonably conclude that a police officer had been grossly negligent. *See id.* Even on that issue, the Supreme Court split, with three justices dissenting. *See id.* at 293, 608 S.E.2d at 924.

It is true that, in deciding whether there was a jury question as to gross negligence, the *Green* majority cited the fact that the police officer had departed from his training. *See id.* at 291, 608 S.E.2d at 923. However, it

seems that the more critical fact that created a jury question as to gross negligence was the police officer's "own testimony about assumptions made concerning the presence of people on the other side of the door" when he fired frangible rounds into it. *See id.* It also appears that there was no objection to the admissibility of such evidence pertaining to training.

For these reasons, the Court finds that the training materials are not admissible to establish a standard of care, which must be established by expert testimony.

Nevertheless, in light of both *Johnson* and *Green*, the Court also finds that the training materials may be admissible, with proper limiting instructions, to show that Officer VanMarter departed from his training. Though the training materials may not be used to establish the standard of care, the fact that Officer VanMarter departed from his training may be admissible to determine whether Officer VanMarter acted with such " `indifference to others as constitutes an utter disregard of prudence amounting to a complete neglect of the safety' of others." *See Green*, 269 Va. at 291, 608 S.E.2d at 923.

## IV. *Opinion Testimony*

The Supreme Court of Virginia has held "that Code § 8.01-401.1 does not authorize the admission in evidence, upon the direct examination of an expert witness, of hearsay matters of opinion upon which the expert relied in reaching his own opinion, notwithstanding the fact that the opinion of the expert witness is itself admitted, and notwithstanding the fact that the hearsay is of a type normally relied upon by others in the witness' particular field of expertise." *McMunn v. Tatum*, 237 Va. 558, 566, 379 S.E.2d 908, 912 (1989). Based on this holding, the Supreme Court concluded that a "trial court, while permitting [an expert witness] to state his own conclusions [on direct examination], correctly excluded the hearsay opinions upon which he relied." *Id.*

In the present case, the plaintiffs' experts have formed certain opinions based on the opinions of police officers' expressed in depositions. In accordance with *McMunn*, the Court finds that the police officers' opinions may be relied upon by the plaintiffs' experts, but are themselves inadmissible on direct examination.