MARGARET H. CARTER v. RAYMOND E. CARR

No. 8318SC482

(Filed 17 April 1984)

1. **Attorneys at Law § 3.1; Rules of Civil Procedure § 60.2— motion for relief from judgment—no conflict of interest by attorney**

   The trial court in a medical malpractice action did not abuse its discretion in the denial of plaintiff's Rule 60(b)(3) motion for relief from a judgment on the ground that, prior to plaintiff's filing of the lawsuit, plaintiff's husband had discussed the facts of her case with the attorney who represented defendant at trial in an attempt to retain him for the case where there was evidence supporting a conclusion that plaintiff's husband consulted defendant's attorney only about a possible claim against his former employer for wrongful discharge and not about plaintiff's case.

2. **Rules of Civil Procedure § 60.4— denial of motion for relief from judgment—standard of review**

   The abuse of discretion test was used as the standard of review of the denial of a Rule 60(b)(3) motion for relief from a judgment.

3. **Physicians, Surgeons, and Allied Professions § 15— medical malpractice action—question concerning plaintiff's lawyer—absence of prejudice**

   The plaintiff in a medical malpractice action was not prejudiced when defense counsel asked plaintiff's husband whether plaintiff or her husband "or your lawyer" had looked at plaintiff's hospital record before plaintiff's lawsuit was filed when plaintiff had filed the complaint pro se where both plaintiff's husband and plaintiff's counsel explained to the jury that plaintiff's attorney came into the case after the original complaint was filed and that he signed the complaint after amending it, and where the effectiveness of plaintiff's counsel with the jury was not in any way hampered by such question.

4. **Appeal and Error § 52; Rules of Civil Procedure § 8.1— medical malpractice action—improper prayer for relief—door not opened to evidence of**

   The defendant in a medical malpractice action did not open the door to the admission of evidence of the original prayer for relief which stated a

Carter v. Carr

specific demand for monetary relief exceeding $10,000 in violation of G.S. 1A-1, Rule 8(a)(2) when his counsel cross-examined plaintiff's husband about the amended complaint, and the trial court properly limited plaintiff's redirect examination of her husband to the fact that the complaint had been amended as discussed on cross-examination.

**5. Evidence § 34.4; Physicians, Surgeons, and Allied Professions § 15— medical malpractice action—statement by defendant's partner—inadmissible hearsay**

A statement by the partner of the defendant in a medical malpractice action that plaintiff's vein graft had been inserted backwards was not competent as an admission but was inadmissible hearsay where there was no evidence that the partner was an agent with authority to speak for defendant, and where the statement did not relate to partnership business and was not made within the scope of the declarant's authority as a partner.

**6. Appeal and Error § 49.1— exclusion of testimony—failure to show prejudicial error**

The exclusion of testimony was not prejudicial error where the record failed to show what the excluded testimony would have been and where similar testimony was thereafter admitted.

**7. Witnesses §§ 5.1, 7— evidence competent for impeachment and corroboration**

Testimony in a medical malpractice action that plaintiff's husband refused to allow plaintiff to be treated by the witness at a Medicaid clinic because it was beneath his dignity was admissible to impeach the testimony of plaintiff's husband and to corroborate the witness's later testimony that plaintiff's husband often stood in the way of his wife and her receipt of proper medical care.

**8. Witnesses § 9— clarifying testimony on redirect examination**

A witness could properly be permitted on redirect examination to clarify his testimony which had been cast into doubt on cross-examination.

**9. Witnesses § 9— redirect examination—discretion of court**

The trial court had the discretion to permit counsel to elicit on redirect evidence which could have been but was not admitted during direct examination.

APPEAL by plaintiff from *Freeman, Judge.* Judgment entered 20 October 1982 in Superior Court, GUILFORD County. Heard in the Court of Appeals 13 March 1984.

*McCain & Essen by Grover C. McCain, Jr., and Jeff Erick Essen for plaintiff appellant.*

*Henson and Henson by Perry C. Henson and Jack B. Bayliss, Jr., for defendant appellee.*

BRASWELL, Judge.

After the amputation of her left leg plaintiff sued her surgeon for malpractice. Answering the issues submitted to it in the defendant's favor, the jury determined that the plaintiff had not been injured by the defendant's alleged negligence and was entitled to no recovery. On appeal, the plaintiff has presented three questions for review: (1) did the trial court err in denying the plaintiff's Rule 60(b)(3) motion for relief from judgment; (2) did the trial court commit reversible error by allowing the plaintiff's witness, David Carter, to be cross-examined concerning the amendments to the complaint filed; and (3) did the trial court commit reversible error with regard to the various evidentiary rulings it made during the course of the trial?

The evidence presented by the plaintiff tended to show that on 26 June 1974 the plaintiff and her husband, David Carter, were in Durham at approximately 10:30 p.m. when the plaintiff developed a sudden severe cramp in the lower part of her left leg. Upon returning to their home in High Point and with the plaintiff's leg still in the same condition, Mr. Carter took his wife to the High Point emergency room around 12:30 that night. Dr. Chester Carl Haworth, Jr., examined the plaintiff and diagnosed the source of her pain as a vascular problem and called Dr. Raymond E. Carr, a vascular surgeon, to further examine the plaintiff.

Dr. Carr, the defendant, determined, according to the plaintiff's evidence, that there was blockage in the femoral artery, preventing the blood from flowing to the lower left leg and that vascular surgery was needed, which was performed the next day. The plaintiff continued to experience problems and her foot was amputated below the knee on 10 July 1974. Two days later, with infection having entered the tissue, Dr. Carr amputated her leg above the knee. After months of non-healing, Dr. Carr suggested the plaintiff see Dr. James M. Marlowe, an orthopedic specialist. On 16 May 1975 the plaintiff re-entered the hospital and Dr. Marlowe revised the amputation site.

The defendant's evidence shows that the first operation was delayed because Mr. Carter, the plaintiff's husband, insisted that the operation not be done under local anesthesia, the normal procedure, but rather under general anesthesia. Later, as the plain-

tiff's leg continued to worsen, Dr. Carr informed the plaintiff that in order to protect her life he would have to amputate. He originally wanted to amputate her leg above the knee, but on Mr. and Mrs. Carter's insistence, agreed to try to save the knee. Dr. Carr warned that because the infection had spread up her leg that an amputation below the knee might not be sufficient and that another operation might be needed.

[1] The plaintiff's first assignment of error challenges the trial court's denial of her G.S. 1A-1, Rule 60(b)(3) motion for relief from judgment based on the misconduct of an adverse party. After the final judgment had been entered on 20 October 1982, the plaintiff filed this motion on 7 March 1983. It was heard and denied in April of 1983. The plaintiff's counsel asserts that after notice of appeal had been given he learned that on 18 April 1975, prior to the filing of any lawsuit by the plaintiff, Mr. Carter had met with Perry Henson and discussed the facts of their case with him in an attempt to retain Mr. Henson as their attorney. Mr. Henson, who subsequently represented the defendant in this action, vaguely remembers discussing with Mr. Carter a possible claim for wrongful employment discharge, but emphatically denies discussing a medical malpractice claim because at that time he did not accept malpractice cases against health care providers.

Since the proposed record on appeal had been served on the defendant prior to the filing of this motion, the trial court ruled on the Rule 60(b)(3) motion for the limited purpose of indicating how it would have ruled were the appeal not pending. Since a Rule 60(b) motion is addressed to the sound discretion of the trial court, our review is limited to whether or not the trial court abused his discretion in denying the motion. *Sink v. Easter*, 288 N.C. 183, 217 S.E. 2d 532 (1975). We hold that the trial court did not abuse his discretion.

[2] [We note some doubt exists as to the appropriate appellate standard of review of the denial of a Rule 60(b)(3) motion. We have followed *Sink v. Easter, supra,* which establishes the test of abuse of discretion. *Bell v. Martin,* 43 N.C. App. 134, 142, 258 S.E. 2d 403, 409 (1979), utilized an "any competent evidence" test. *Bell* was subsequently reversed in the Supreme Court on other grounds, 299 N.C. 715, 264 S.E. 2d 101, *reh. denied,* 300 N.C. 380, 267 S.E. 2d 686 (1980). *Thelen v. Thelen,* 53 N.C. App. 684, 281

S.E. 2d 737 (1981), applies both tests. We would suggest that if the motion requires an evidentiary hearing before ruling, then the standard for review of the final order would be "any competent evidence," an objective determination. If the ruling on the motion could be made without an evidentiary hearing, that is, if the ruling is subjectively made, then the standard for review is "abuse of discretion."]

The record contains affidavits from David Carter, William G. Pfefferkorn (the plaintiff's attorney), John Haworth, and Perry Henson (the defendant's attorney). Mr. Carter contends that he went to Mr. Haworth for legal advice on a possible lawsuit by his wife against Dr. Carr. Because of a conflict in interest, Mr. Carter contends Mr. Haworth refused to take the case, but recommended three other attorneys, one of which was Perry Henson, from whom Mr. Carter could seek help. Mr. Haworth's affidavit states that he did refer Mr. Carter to three other attorneys but supports Mr. Henson's contention that at this time Mr. Carter was seeking advice on a possible lawsuit for Mr. Carter's wrongful discharge by his former employer, Crown Hosiery Mills. With affidavits to support both positions, the trial judge made his decision based on the credibility he accorded these affidavits. From the materials in the record, the trial judge did not abuse his discretion by according more weight to the affidavits of Mr. Henson and Mr. Haworth. His order to deny the plaintiff's motion was supported by sufficient findings of fact and conclusions. Furthermore, according to Mr. Pfefferkorn's affidavit, Mr. Carter knew throughout the trial of his discussion with Mr. Henson, but failed to inform his attorney of the extent of their conversation until an unfavorable judgment had been entered against his wife. As the trial judge concludes in his order, the plaintiff's delay in bringing this matter to the attention of the court, if in fact Carter had conferred with Henson on this case, was unreasonable and inexcusable. There were no objections or exceptions to any of the trial court's findings of fact or conclusions.

[3] The plaintiff's second assignment of error asserts that the trial court improperly permitted defense counsel to cross-examine Mr. Carter about allegations in the complaint. Although we agree that it is improper to impeach a witness who is not a party with allegations contained in the complaint, it is not on this basis that

the plaintiff assigns error, and at trial the plaintiff did not object to this subject matter line of questioning.

The objectionable portion of the cross-examination arose through defense counsel's comment that the Carters as well as their attorney brought a damaging malpractice suit against Dr. Carr without first checking out the facts. Mr. Carter's cross-examination began with defense counsel's attempt to get Mr. Carter to admit that "the only allegation [in the complaint] that Mrs. Carter made against Dr. Carr was that he didn't come to see her for about seven days," from 1 July 1974 to 7 July 1974. Refusing to admit that the complaint contained only one allegation, Mr. Carter pointed out: "[B]ut see, number two right here, 'Allow the Plaintiff to amend her complaint when we get the records.' See, that was done without having any records." Then, defense counsel replied: "You mean when you filed this lawsuit against Dr. Carr in 1979, that neither you nor Mrs. Carter or *your lawyer* had ever checked out her hospital record and looked at it?" (Emphasis added.) Plaintiff's attorney vehemently objected to this reference to him because at the time this part of the complaint was filed the plaintiff had no attorney. The original complaint filed by the plaintiff *pro se* had violated G.S. 1A-1, Rule 8(a)(2), which states that in all professional malpractice actions, if the matter in controversy exceeds $10,000, the pleading shall not state the specific demand for monetary relief. The trial court denied the defendant's motion to dismiss on the basis of this Rule 8 violation and allowed the plaintiff to amend the complaint's prayer for relief. It was at that juncture that the attorney for the plaintiff first entered this action and he proceeded to amend the complaint and to prepare for trial.

The trial court *sustained* plaintiff's counsel's objection, but defense counsel through subsequent motions implied that plaintiff did have the benefit of counsel at this time because the amended complaint contained the plaintiff's counsel's signature. The plaintiff now asserts that this line of questioning was irrelevant, misleading, and prejudicial to the plaintiff in that it impugned the integrity of her counsel. From our review of the record as a whole, the plaintiff has failed to show that the jury was misled or that she was in any way prejudiced. In the first place, Mr. Carter wanted, and was given, the opportunity to explain, and did so quite adequately, to settle the confusion. Mr. Carter stated:

I can explain it.

* * * *

Mr. Pfefferkorn [plaintiff's attorney] signed this paper here after amending the last page by orders of the Judge, and you [defense counsel] got a sealed order. This is not the original third sheet.

Secondly, plaintiff's attorney, as he objected to defense counsel's inference that he had participated in this case from the start, was allowed to explain *in front of the jury* his version of the facts. He argued:

Your Honor, this Complaint was amended in January of 1980 when my name was put in there, and the lawyer knows it. You can look at the sealed file by the Judge. That shows that was amended in January of 1980, Your Honor.

MR. HENSON [Defense counsel]: I am entitled to cross-examination about his allegation, Your Honor, without Mr. Pfefferkorn making a speech, too.

* * * *

MR. PFEFFERKORN: Your Honor, I am going to object. It's in the file that I was not the attorney. The Complaint was amended after I got in the case in January of 1980, but nunc pro tunc means the old date was put in there, but I was not in the case. Mr. Henson is trying to deceive us and should not be allowed to.

MR. HENSON: I object to this kind of comments of counsel.

We fail to see how the inclusion of plaintiff's attorney within that hasty group in any way hampered his effectiveness with the jury once the situation was explained by Mr. Carter and Mr. Pfefferkorn. Subsequently, defense counsel was able to make Mr. Carter admit that from the plaintiff's hospital record, plaintiff's Exhibit No. 1, Dr. Carr had in fact visited Mrs. Carter six times within the seven days in question. Because the jury was not misled nor was the plaintiff's case improperly prejudiced by the defense counsel's method of impeachment, we hold the trial court committed no reversible error.

[4]  The plaintiff further asserts that the trial court erred when it prevented the plaintiff from admitting into evidence the original prayer for relief, which had been in violation of G.S. 1A-1, Rule 8(a)(2), before it was amended. The plaintiff asserts that the defendant by asking Mr. Carter questions concerning the amended complaint had opened the door as to the amount of the original prayer for relief. The trial court disagreed stating: "Well, I will let you go into the fact that changes were made, but I don't think you need to bring out what the amount was in the first Complaint. I will sustain the objection to that."

The purpose behind G.S. 1A-1, Rule 8(a)(2) is " '[to] avoid adverse press attention prior to trial, and thus save reputations from the harm which can result from persons reading about huge malpractice suits and drawing their own conclusions based on the money demanded.' [Citation omitted.]" *Jones v. Boyce*, 60 N.C. App. 585, 587, 299 S.E. 2d 298, 300 (1983). Although this stated rationale for the rule speaks for protection prior to trial, we can find no reason on the facts in this case to allow the plaintiff during trial to expose to the jury the original amount demanded before liability has been established. Jurors, like other persons, after hearing of the amount may unfairly draw their own conclusions based on the money demanded. We hold the trial court properly limited the plaintiff's redirect examination of Mr. Carter to the fact that the complaint had been amended which had been discussed on cross-examination.

[5]  The plaintiff's final assignment of error challenges several evidentiary rulings made by the trial court. In the first instance, the plaintiff asserts that the trial court erred by refusing to allow Mr. Carter to testify to Dr. Canipe's statement that the vein graft had been inserted backwards on the basis that Dr. Canipe's statement was an admission and admissible against the defendant as his partner. Dr. Canipe had assisted Dr. Carr in the operation on the plaintiff and there was testimony that they were partners. We hold the trial court properly excluded this statement. The current North Carolina rule on vicarious admissions states that an agent's authority to perform a certain task for a principal does not necessarily imply he has the authority to talk about it afterwards. *Robinson v. Moving and Storage, Inc.*, 37 N.C. App. 638, 246 S.E. 2d 839 (1978). The plaintiff offered no evidence to lay the foundation that Dr. Canipe was in fact an agent and that he had

authority to speak for Dr. Carr. Because Dr. Canipe's statement as an agent did not accompany the act committed as agent, the statement is hearsay and inadmissible. Also, because the statement did not relate to the partnership business and was not made by Dr. Canipe within the scope of his authority as a partner, the statement is again hearsay and inadmissible. *See* 2 Brandis on North Carolina Evidence § 170 (1982).

[6]   Secondly, the plaintiff contends that the trial court erred by sustaining the defendant's objection, preventing statements made by Dr. James Marlowe into evidence. The plaintiff through Mr. Carter attempted to elicit testimony that Dr. Marlowe had stated that the stump wound was the biggest mess he had ever seen. Believing that Dr. Marlowe would be called as a witness, the plaintiff offered this evidence to impeach or corroborate, depending on Dr. Marlowe's testimony. Defense counsel objected, stating that Dr. Marlowe would not be called as a witness. When the objection was sustained, the plaintiff made no offer of proof. However, Dr. Marlowe was later called to the stand and testified favorably for Dr. Carr. Nevertheless, the exclusion of evidence will not be reviewed on appeal unless the record sufficiently shows what the evidence would have been. *Gibbs v. Light Co.*, 268 N.C. 186, 150 S.E. 2d 207 (1966). The fact that the defendant later decided to call Dr. Marlowe does not change our need for an offer of proof of the excluded evidence in the record. We also fail to see how the plaintiff has been prejudiced by the trial court's ruling when Dr. Marlowe was cross-examined and subjected to impeachment tactics by the plaintiff concerning his statement to the Carters. He even conceded that "it certainly wasn't one of the biggest I had ever seen by a long shot, but it was a mess." We hold the trial court's ruling did not constitute prejudicial error.

[7]   The plaintiff further asserts that the trial court improperly allowed Dr. Chester Carl Haworth, Jr., to testify that although the Carters were having financial trouble, Mr. Carter refused to allow the plaintiff to be treated by Dr. Haworth at a Medicaid Clinic. He stated that it "was a bit beneath [Mr. Carter's] dignity to allow her to be seen in this clinic for indigent people." The plaintiff objected on the basis that because Mr. Carter was not a party, his statements were inadmissible. Yet, this evidence was admissible for the purpose of impeaching Mr. Carter's testimony and to corroborate Dr. Carr's later testimony that Mr. Carter

---

---

often stood in the way of his wife and her receipt of proper medical care. 1 Brandis on North Carolina Evidence §§ 47, 49 (1982). We hold the ruling of the trial court was proper.

[8]   The plaintiff also charges that the trial court wrongfully allowed a witness to further explain an answer he had given after cross-examination had ended. The plaintiff has failed to recognize that the defendant on redirect examination could properly allow the witness to clarify his testimony which had been cast into doubt on cross-examination. *See State v. Franks*, 300 N.C. 1, 265 S.E. 2d 177 (1980). On cross-examination, the plaintiff attempted to impeach Dr. James Johnson by implying that he had recommended Dr. Carr very highly although Dr. Carr had only been practicing in town for a few weeks. On redirect, the defendant asked Dr. Johnson if he wanted to explain his answer which Dr. Johnson did. We hold the trial court's ruling was proper.

[9]   Finally, Dr. Jesse Meredith was called by the defendant to testify as an expert in general surgery that Dr. Carr in his treatment of the plaintiff exercised the standard of care required of general surgeons performing amputations. On redirect examination, Dr. Meredith was also asked to contradict a statement made by the plaintiff's expert, Dr. James, that "a monkey could be taught to do surgery." As insignificant as this evidence might seem, the plaintiff has assigned its admission as error. Although the question may have technically been outside the scope of redirect examination, the trial court has the discretion to permit counsel to elicit on redirect evidence which could have been admitted during direct examination but was not. *See State v. Logan*, 27 N.C. App. 670, 219 S.E. 2d 806 (1975). Since the evidence could have been properly admitted to contradict the testimony of the plaintiff's expert witness, we hold that the trial court committed no prejudicial error.

No error.

Judges ARNOLD and WELLS concur.