CONRAD INDUSTRIES, INC. v. WILLY SONDEREGGER, INDIVIDUALLY, AND D/B/A SWISSARTEX EMBLEM, INC., AND KOENIG COMPANY OF ASHE-VILLE, INC.

No. 8328SC1028

(Filed 19 June 1984)

**Rules of Civil Procedure § 60.2; Trial § 49— new trial for newly discovered evi-dence—testimony recanted by witness**

In an action for the wrongful appropriation and use of trade secrets, the trial court did not abuse its discretion in awarding plaintiff a new trial on the ground of newly discovered evidence on an issue concerning defendants' use of plaintiff's computer list of the names of its customers where a defense witness approached plaintiff some five months after trial and recanted his trial testimony that defendants had not used two computer printout customer lists of plaintiff's to solicit business. G.S. 1A-1, Rule 60(b)(2).

APPEAL by defendants from *Allen, Judge.* Order entered in the Superior Court of BUNCOMBE County on 24 January 1983. Heard in the Court of Appeals 8 June 1984.

*Bennett, Kelly & Cagle by Harold K. Bennett for plaintiff ap-pellee.*

*Joel B. Stevenson for defendant appellant.*

BRASWELL, Judge.

Defendants appeal from an order granting plaintiff a new trial on the grounds of newly discovered evidence. We affirm.

The parties are competitors engaged in the embroidered em-blem industry. Willie Sonderegger, the individual defendant, a former employee of the plaintiff, was the President of the defend-ant Koenig Company of Asheville, Inc., which company, according to the Answer, "has undergone a corporate name change and is now SWISSARTEX EMBLEM INC. as of April 30, 1979." In the record and briefs the defendants are often labeled in the singular, refer-ring to Willie Sonderegger as though he were the only party defendant.

The plaintiff contends that the defendant Sonderegger wrongfully took its computer list of customers' names, a trade secret, and used it to solicit business for himself and his com-

panies. In the September 1981 trial the jury answered seven issues. Only Issues Nos. 5 and 6 are involved in this appeal:

> 5. Is the computer printout of the Plaintiff's customer names a trade secret of the Plaintiff?
>
> ANSWER: Yes
>
> 6. Did the Defendants use the Plaintiff's customer name list without the permission and consent of the Plaintiff?
>
> ANSWER: No

However, based upon the answers given by the jury, on all the issues, the court entered judgment against the defendants, permanently restrained them from using "the striking apparatus," an attachment to a punching machine, and enjoined the defendants from using the punch pattern tape of the American Flag owned and originated by the plaintiff and from producing emblems of the American Flag corresponding to said punch tape. Then, the court ordered:

> 3. That the computer printout of the Plaintiff's customer list in use in 1979 is a trade secret belonging to the Plaintiff.

On 2 March 1982 the plaintiff filed a "Motion for Relief From Final Judgment and For New Trial," pursuant to G.S. 1A-1, Rule 60(b)(2), on the ground of newly discovered evidence. Specifically, it moved "for a partial new trial on Issue #6."

At the time of the trial and for some period of time previously, Winfred O. McGraw had been the Sales Manager for the defendants. Mr. McGraw testified as a witness for the defendants. In January 1982 a heated argument developed between McGraw and Sonderegger. The result was that McGraw became suddenly unemployed. Immediately on 27 January 1982 the now disgruntled former employee of the defendants, McGraw, went to the plaintiff and recanted his trial testimony. Among other things, he told the plaintiff's officers that the defendants did have two computer printout customer lists of the plaintiff's and had used the lists to obtain names and addresses of persons to whom to write letters soliciting business from plaintiff's customers. Other matters of trade information were disclosed, as shown in his affidavit of 23 February 1982.

Under Rule 60(b)(2) the law gives the trial court discretion to relieve a party from a final judgment upon a showing of newly discovered evidence "which by due diligence could not have been discovered in time to move for a new trial" within ten days after entry of the original judgment. This motion must be made within a reasonable time and within one year after the judgment was entered.

As we apply this law to our facts it is plain that the motion was timely filed. The final judgment occurred 4 September 1981. The discovery of the recanted testimony of the witness McGraw and of the existence of two computer lists of the plaintiff within the possession of the defendant Sonderegger during the critical times occurred on 27 January 1982, more than ten days after the final judgment. This motion was filed 2 March 1982, and thus was within one year of the entry of final judgment on 4 September 1981.

Only the issue of whether the plaintiff used due diligence to produce evidence at trial of defendants' alleged wrongful use of plaintiff's computer list remains. In framing this question in its brief, the defendant contends that the inquiry should focus on the "defendant's alleged wrongful use of plaintiff's computer customer list *in use in 1979*." (Emphasis added.) Also in its brief the defendants argue:

> Because all of the evidence which Plaintiff forecast deals with a 1977 computer list and a list of unknown date obtained by Defendant prior to 1978, there is no way in which the alleged new evidence could produce an affirmative answer to Issue #6.

We disagree. There is no designation of year in the issue submitted to the jury. The inquiry and questions by plaintiff's counsel were addressed in an all-inclusive manner as to whether Sonderegger had ever had "any" computer list of the plaintiff's. In the face of Sonderegger's pretrial and trial denials, there was no reason for plaintiff to pursue the matter further.

But for Mr. McGraw's recanting his trial testimony some five months later, there was no means by which the plaintiff could have known at the original trial that McGraw's trial testimony was false. During the evidentiary hearing on the present motion

the record shows that during his cross-examination Mr. McGraw said:

A. I only said what his attorney advised me to say.

* * * *

Q. You knew it wasn't true, and you testified anyhow under oath; is that correct? Is that your testimony?

A. Under the direction of his attorney, everybody that testified in [the original trial] testified incorrectly, falsely.

* * * *

A. Everybody that testified for him. That I know of.

* * * *

A. . . . Everyone that testified that had any connection or knowledge of this lawsuit. . . .

* * * *

A. I swore to what [defendant's] attorney told me swear to and—

* * * *

A. I was [sworn to tell the truth] and I was instructed by his attorney to tell a different story and by [Sonderegger]. As his agent and employee.

In other parts of his testimony, Mr. McGraw admitted that at trial he had said that customers were absolutely not obtained from any A-B or Conrad Industries list, but that now his testimony was that both Sonderegger and he had the same computer lists, at various times up to trial, and that these lists were turned over to the plaintiff subsequent to McGraw's discharge from defendant's employment. Also, Sonderegger's evidence at the hearing shows that he used certain names from the plaintiff's computer list to send letters soliciting customers. There was nothing in the pretrial events or cross-examination of the defendant or his witnesses after the denial by McGraw and Sonderegger of the computer lists to justify or require any further follow-up at trial. This can be illustrated by referring to Sonderegger's pre-

trial deposition, which was received into evidence as defendants' Exhibit No. 5 for this motion hearing.

> Q. Do you have any knowledge of their computer print-outs?

> A. No.

At trial Sonderegger's story had been the same.

> Q. All right. Do you have a computer printout like they say, as it comes straight from their computer?

> A. I never had one. I never saw one. No. No.

However, during the motion hearing Sonderegger admitted that when this action was commenced he gave McGraw a computer printout customer list received from his half-brother, Pete Sommer, because he was afraid that he would be accused of having stolen the lists. At this hearing plaintiff physically offered into evidence two boxes of materials given to it in January 1982 by McGraw which included a complete computer printout of plaintiff's customer list.

Although the trial judge in his conclusion of law used the more polite word of "recanted," instead of "perjured" testimony, the result on the facts show that McGraw as defendant's witness gave perjured testimony at the original trial. We hold that the plaintiff used due diligence in bringing to the court's attention the merits of this motion and that the plaintiff could not have otherwise learned of the recanted evidence and perjured testimony but for the subsequent change by Mr. McGraw. The conclusion that the newly discovered evidence will probably result in an affirmative answer in plaintiff's favor on a new trial of Issue No. 6 is fully supported by the evidence.

By his final assignment of error the defendants contend that the court erred when it granted a new trial as a matter of law and not in the exercise of discretion. We disagree and hold the judge acted properly. After stating his separate findings of fact and conclusions of law, the judge decreed:

> For the foregoing reasons, the Court now grants the Motion of the Plaintiff for a new trial as to Issue #6 and orders that the case be set for a new trial on said Issue.

We hold this ruling to be a discretionary one. As noted earlier, the motion before the court was made under Rule 60(b)(2). This rule allows discretionary relief upon a proper showing. On the facts found and conclusions made we find no abuse of discretion in ordering a new trial. *Sink v. Easter*, 288 N.C. 183, 217 S.E. 2d 532 (1975). But see and compare *Carter v. Carr*, 68 N.C. App. 23, 26, 314 S.E. 2d 281, 283 (1984).

Affirmed.

Judges HILL and BECTON concur.